IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALVIN GILLYARD,                        :    CIVIL ACTION
                                       :    No. 12-125
            Plaintiff,                 :
                                       :
      v.                               :
                                       :
TIMOTHY F. GEITHNER,                   :
Secretary, Department of the           :
Treasury,                              :
                                       :
            Defendant.                 :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          January 28, 2015


         Plaintiff Alvin Gillyard brings this action under

Title VII of the Civil Rights Act of 1964 alleging retaliation

against Defendant Timothy F. Geithner, Secretary of the U.S.

Department of the Treasury.[1] Plaintiff avers that as an employee

of the United States Mint, located in Philadelphia,

Pennsylvania, Defendant unlawfully retaliated against him by

refusing to rehire him after he filed complaints alleging racial

discrimination. Defendant has moved for summary judgment and,

for the following reasons, the Court will grant the motion.

_____

[1]      The Court notes that this position is now held by
Secretary Jacob J. Lew.

I.   **FACTUAL BACKGROUND**[2] **AND PROCEDURAL HISTORY**

Plaintiff, an African-American male, is a former United States Mint (the "Agency") employee who began his employment on November 16, 1998, as a Material Expediter in Philadelphia, Pennsylvania. Am. Compl. ¶¶ 6, 8. The Agency terminated Plaintiff in January 2002 as part of a reduction in force ("RIF"), id. ¶ 9, but then recalled him in March 2004 to a temporary two-year appointment, id. ¶ 10. Upon returning, Plaintiff learned that, at the time of the RIF, he had "bumping rights" over two Caucasian Material Expediters--that is, Plaintiff had seniority over these two employees. Id. ¶ 11. After discovering this information, Plaintiff complained to Adrienne Cropp, the Agency's Equal Employment Opportunity ("EEO") Specialist, and Ruth Cosby, the Agency's EEO Counselor, about this alleged discriminatory treatment. Id. ¶ 14. According to Plaintiff, Cropp did not file an EEO complaint on his behalf, nor did she tell him what his rights were if she refused to file his complaint. Id. ¶ 14. Similarly, Cosby said she would look into his claim but she did not file an EEO complaint. ¶ 15.

In 2007, Plaintiff obtained a Heat Treater position. Id. ¶ 17. This was a temporary position, and although Plaintiff

---

[2] Unless otherwise noted, the facts reported herein are those the parties do not dispute. The Court views disputed facts in the light most favorable to Plaintiff as the nonmoving party.

applied for permanent positions, he was unsuccessful. Id. Cosby and John Brenner, a Human Resources specialist, told Plaintiff that he could not apply because he was a temporary employee, although the Agency had converted two other temporary employees to permanent positions. Id.

Thereafter, Plaintiff and approximately seven other African-American employees filed complaints with the Agency's Office of Special Counsel ("OSC") and the Merit Systems Protection Board ("MSPB") alleging racial discrimination. Id. ¶ 18. Plaintiff was the spokesperson for this group, and alleged that management was discriminating against African-American employees. Id. ¶ 19. In January 2008, the Agency dismissed the group complaint. Id. ¶ 20.

The Agency laid off Plaintiff from his temporary Heat Treater position in March 2008. Id. ¶ 24. Plaintiff then applied for a job as Material Handler at the Agency's Denver, Colorado, location. Id. ¶ 21. The Agency allegedly offered Plaintiff the job, but then withdrew this offer on April 15, 2008, because Plaintiff had not registered with the Selective Service System; yet, as Plaintiff notes, the Agency had approximately thirty-two Philadelphia employees who were not registered for Selective Service. Id. Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") on February 15, 2009. Def.'s Br. 2. Plaintiff also applied for three additional

positions, to no avail: on December 22, 2008, the Agency rejected Plaintiff's application for the position of Metal Forming Machine Operator; on January 7, 2009, the Agency rejected Plaintiff's application for the position of Coining/Weighing/Kuster Machine Operator; and on November 16, 2010, the Agency rejected Plaintiff's application for the position of Metal Forming Machine Operator. Am. Compl. ¶¶ 25-27. Plaintiff subsequently filed this suit, which originally brought two claims: (1) race discrimination, in violation of Title VII; and (2) retaliation, in violation of Title VII.

The Court granted Defendant's motion to partially dismiss the Amended Complaint (ECF No. 16), and dismissed the discrimination claim (Count I) for Plaintiff's failure to exhaust his administrative remedies. ECF No. 26. Following discovery, Defendant moved for summary judgment on the retaliation claim (Count II). ECF No. 37. Plaintiff filed a response in opposition (ECF No. 39), to which Defendant has replied (ECF No. 42). Defendant's motion is ripe for disposition.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion

for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)) (internal quotation marks omitted).

**III. DISCUSSION**

    A.   <u>Legal Standard</u>

       Under Title VII,

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Plaintiff offers no direct evidence of retaliation and therefore his case succeeds or fails depending on his ability to show indirect evidence of retaliation. Where only indirect evidence is available, Courts analyze Title VII retaliation cases according to the three-step burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973). <u>Anderson v. Wachovia Mortg. Corp.</u>, 621 F.3d 261, 270 (3d Cir. 2010).

       First a plaintiff must establish a prima facie case of retaliation, wherein he "must tender evidence that: '(1) []he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against h[im]; and (3) there was a causal connection between h[is] participation in the protected activity and the adverse employment action.'" <u>Moore v. City of Phila.</u>, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting <u>Nelson v. Upsala Coll.</u>, 51 F.3d 383, 386 (3d Cir. 1995)). An

"adverse employment action" in this context is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).

Once the plaintiff has established his prima facie case, the burden of production shifts to the defendant employer to "articulate some legitimate, non[retaliatory] reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802; see also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981) ("It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it [retaliated] against the plaintiff."); Anderson, 621 F.3d at 271 (noting that the defendant only has a burden to produce a legitimate reason, and that it "need not even prove that the tendered reason was the actual reason for its behavior").

If the employer is able to provide a legitimate and nonretaliatory reason, the plaintiff must then show that the proffered reason is a pretext. McDonnell Douglas, 411 U.S. at 804-05. The plaintiff must provide evidence sufficient "to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Moore, 461 F.3d at 342 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 501 (3d

Cir. 1997)) (internal quotation marks omitted). The plaintiff can satisfy this burden at the summary judgment stage by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanations for its action "that a reasonable factfinder could rationally find them 'unworthy of credence.'" Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)). Finally, the Supreme Court has recently held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," rather than the lesser standard applied in "mixed-motive" discrimination cases. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

B.   Analysis

Plaintiff offers no direct evidence of retaliation. Therefore, he may rely on indirect evidence and proceed under the well-rehearsed McDonnell Douglas burden-shifting paradigm. See Anderson, 621 F.3d at 270. Accordingly, the Court will examine Plaintiff's evidence in order to determine whether he has satisfied each element of his prima facie case. As the following shows, he has not.

1.  <u>Protected Activity</u>

The parties disagree about which of Plaintiff's actions constitutes a "protected activity" for purposes of his retaliation claim. Defendant would eliminate the MSPB filing from consideration, as the "MSPB appeal did not involve allegations of discrimination or reprisal." Def.'s Br. 11. There are two reasons why this does not matter. First, there is no indication in the record that Plaintiff involved individuals in the filing of his MSPB complaint that he did not involve in the filing of his other complaints. Second, both parties agree that the MSPB and OSC complaints were brought around the same time-- in the months between December 2007 and February 2008. Pl.'s Br. 7; Def.'s Br. 2. The Court need not decide whether the MSPB filing constitutes a "protected activity," as it occurred during the same time period as the OSC complaint, which undisputedly qualifies as a "protected activity." <u>See</u> Def.'s Br. 11.

Plaintiff, for his part, argues that Defendant has neglected three additional instances of protected activity: (1) Plaintiff's informal complaint[3] of race discrimination to

---

[3]      As Plaintiff notes, the Third Circuit does not "require a formal letter of complaint to an employer or the EEOC as the only acceptable indicia of the requisite 'protected conduct.'" <u>Barber v. CSX Distribution Servs.</u>, 68 F.3d 694, 702 (3d Cir. 1995); <u>see also</u> <u>id.</u> (discussing this proposition in the context of a claim under the Age Discrimination in Employment Act, but relying on <u>Sumner v. U.S. Postal Service</u>, 899 F.2d 203, 209 (2d Cir. 1990), a Title VII case).

Adrienne Cropp, the Agency's EEO Specialist, sometime after
returning to work in March 2004, Pl.'s Br. 6 & Ex. H, Gillyard
Decl. ¶¶ 7-10; (2) Plaintiff's informal complaint of race
discrimination to Ruth Cosby, the Agency's Human Resources
Manager, at around the same time, id. at 6-7 & Ex. H, Gillyard
Decl. ¶¶ 7-10; (3) Plaintiff's 2007 attempt to file, by
approaching Cropp, a race discrimination complaint on behalf of
himself and seven other African-American employees, id. at 7;
and (4) Plaintiff's May 2008 attempt to file, by approaching
Cropp, an EEOC complaint, id. at 7-8 & Ex. P-1, P-2. Of these
additional three instances, only the May 2008 attempt to file
holds any relevance for Plaintiff's prima facie case, since it
occurred after the (uncontested) filing of the OSC complaint.
Therefore, the Court considers the undisputed OSC and EEOC
complaints, filed in or around December 2007 and February 2009,
respectively, as well as Plaintiff's May 2008 attempt to file an
EEOC complaint, as protected activities for purposes of
Plaintiff's retaliation claim.

### 2.   Adverse Action

In order to succeed in establishing a prima facie case
of retaliation, Plaintiff must show that his employer took an
adverse action against him after he filed his discrimination
complaints. The parties do not contest that the alleged adverse

10

actions--denial of reinstatement for four Agency positions, spanning from April 2008 to November 2010--occurred after Plaintiff made his complaints.

3.   Causal Connection

Finally, Plaintiff must show there is a causal connection between the protected activity and adverse action. Plaintiff argues causation in three ways. First, he points to the temporal proximity of the protected activity and the adverse action. He does this both generally and specifically. In general, he claims that "since [he] started engaging in filing of formal complaints in December 2008 [sic], the Agency have [sic] consistently denied his applications for positions that he was clearly qualified for." Id. at 8. More specifically, he argues that "the close proximity of [his] protected activities from December 2007 and continuing into April 2008, to the withdrawal of the initial selection for the Denver Material Operator position" is enough to create an inference of causation. Id. at 9. Second, Plaintiff argues that an alleged inconsistency in the Agency's handling of his April 15, 2008, non-selection is sufficient to infer causation. Id. at 9-10. Third, Plaintiff contends that certain Agency employees knew about his filing of the OSC and EEOC complaints and "had their finger prints in the decision making process or could have

11

influenced the decisions to deny [him] these positions." Id. at 10.

The Third Circuit allows a plaintiff to "rely on a 'broad array of evidence' to demonstrate a causal link between his protected activity and the adverse action taken against him." Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000)). "In certain narrow circumstances, an unusually suggestive proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection." Id. (internal quotations marks omitted). On the other hand, the "mere passage of time is not legally conclusive proof against retaliation." Id. (quoting Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892, 894 (3d Cir. 1993)) (internal quotation marks omitted). A court may need to assess other factors as well. For example,

> [w]here the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee, or other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole.

Id. (citation omitted). In any event, a plaintiff "cannot establish that there was a causal connection without some

12

evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." Daniels v. Sch. Dist. of Phila., No. 14-1503, 2015 WL 252428, at *10 (3d Cir. Jan. 20, 2015).

Marra is instructive on the causation question. In that case, a former employee of the Philadelphia Housing Authority ("PHA") brought a retaliation suit against his erstwhile employer, claiming that it terminated him because he testified in a reverse-race discrimination lawsuit against the PHA nine months earlier. Marra, 497 F.3d at 291-93. The plaintiff prevailed at trial on his state claim (i.e., his Pennsylvania Human Relations Act claim) and the PHA appealed. Id. at 296-97. The Third Circuit panel, in evaluating the sufficiency of the evidence, agreed with the district court that the nine-month period was too long to be unusually suggestive and therefore was insufficient. Id. at 302, 303 n.14. The court also considered other evidence "establish[ing] an intervening pattern of antagonism" against the plaintiff. Id. This evidence included the vandalization of the plaintiff's computer and subsequent inaction on the PHA's part, the plaintiff's exclusion from an important meeting, the negative reaction of a top PHA official upon learning that the plaintiff had testified, and the plaintiff's involuntary demotion after being deposed. Id. at 304. Significantly, the court noted that the time period for

determining whether or not the proximity between the adverse action and protected activity was unusually suggestive should have been measured from the date the plaintiff engaged in the protected activity (testifying at trial) to the date the PHA decided to terminate him[4]--in this case, only five months. Id. at 305. Viewed in this light, the court found that five months was a "more suggestive time frame" and that, together with the evidence of antagonism, the evidence as a whole supported an inference of causation. Id.

Here, Plaintiff engaged in protected activities sometime between December 2007 and February 2008 (OSC complaint), in May 2008 (attempted EEOC complaint), and again in February 2009 (EEOC complaint). The adverse actions--non-selection for four different Agency positions--occurred on April 15, 2008, December 22, 2008, January 7, 2009, and November 16, 2010. Pl.'s Br. 1-2. The Court will consider each adverse action in turn.

a.   April 15, 2008, Non-Selection

Plaintiff's April 15, 2008, non-selection occurred only two months after the latest alleged date he filed his OSC complaint. But such temporal proximity is not close enough to

---

[4]       In other words, not to the date the PHA actually terminated him, but rather to the date the PHA decided to do so.

support, on its own, an inference of retaliation. See, e.g.,
Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)
("The cases that accept mere temporal proximity . . . as
sufficient evidence of causality to establish a prima facie case
uniformly hold that the temporal proximity must be very close."
(internal quotation marks omitted)); LeBoon v. Lancaster Jewish
Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) ("Although
there is no bright line rule as to what constitutes unduly
suggestive temporal proximity, a gap of three months between the
protected activity and the adverse action, without more, cannot
create an inference of causation and defeat summary judgment.").[5]

     Given that the temporal nexus between the protected
activity and the alleged retaliation is not unusually
suggestive, in order for Plaintiff to establish his prima facie
case for this claim, he must produce other "demonstrative proof"
sufficient to infer causation. Marra, 497 F.3d at 302. Plaintiff

---

[5]     Compare Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d
Cir. 1989) (finding that the plaintiff "demonstrated the causal
link between the [protected activity and adverse action] by the
circumstance that the discharge followed rapidly, only two days
later, upon [the defendant's] receipt of notice of [the
plaintiff's] EEOC claim"), with Robinson v. City of Pittsburgh,
120 F.3d 1286, 1302 (3d Cir. 1997) ("Thus, even if timing alone
can prove causation where the discharge follows only two days
after the complaint [as in Jalil], the mere fact that adverse
employment action occurs after a complaint will ordinarily be
insufficient to satisfy the plaintiff's burden of demonstrating
a causal link between the two events."), abrogated on other
grounds by Burlington N. & Santa Fe Ry., 548 U.S. 53 (2006).

endeavors to do so by pointing to the inconsistency in his alleged selection and subsequent withdrawal for failure to register with the Selective Service. He offers two deposition testimonies in support of this argument: (1) Cropp's, who recalled a statement from Bonnie Bautz, Agency Ombudsman, that Plaintiff initially had been selected for the position, Pl.'s Br. Ex. A, Cropp Dep. 29:22-30:16, Dec. 10, 2013; and (2) John Brenner's, Human Resources Specialist for the Bureau of Public Debt's Administrative Resources Center ("ARC"), who recalled telling Plaintiff by telephone that he was ineligible for the position for failure to register with the Selective Service, <u>id.</u> Ex. G, Brenner Dep. 11:14-12:6, Mar. 10, 2014.[6] Other than these alleged conversations, Plaintiff produces no evidence of retaliatory conduct. Moreover, Plaintiff offers no evidence that these individuals or the selecting official for this position had any knowledge of his protected activity. A temporal proximity of three months and the alleged inconsistent handling of Plaintiff's employment application are not sufficient to establish a prima facie case of retaliation--especially without some showing that the relevant decisionmakers[7] knew about

---

[6]      The parties do not object to the hearsay nature of these or any other statements in the record. For the purposes of summary judgment only, the Court will consider these statements.

[7]      In fact, the now-deceased Percy Ryan, who made the hiring decision with respect to the April 15, 2008, non-

16

Plaintiff's protected activity. See Daniels, 2015 WL 252428, at *10. Accordingly, Plaintiff's April 15, 2008, non-selection claim cannot survive summary judgment.

### b.   December 22, 2008, Non-Selection

At a minimum, the December 22, 2008, non-selection occurred seven months after Plaintiff filed his OSC complaint and before he filed his EEOC complaint. This is not unusually suggestive temporal proximity. See LeBoon, 503 F.3d at 233.

As above, in order for Plaintiff to establish his prima facie case for this claim, he must produce additional evidence. Marra, 497 F.3d at 302. He attempts to do so by contending that individuals with knowledge of his protected activities were involved with the selection process or could have influenced it in some way. Specifically, he asserts that Brenner, Cosby, and Cropp "discussed or could have discussed Plaintiff with the selecting officials, and therefore influenced the decisionmakers." Pl.'s Br. 10.

The record evidence supporting Plaintiff's contention is insubstantial.[8] Regarding Brenner, the ARC Human Resources

---

selection, denied any knowledge of Plaintiff's protected activities. Def.'s Br. Ex. 8, Ryan Decl. ¶¶ 1-3.

[8]    Plaintiff's legal argument also fails to persuade. He advocates for the "cat's paw" theory of liability, which the Supreme Court in Staub v. Proctor Hospital, 131 S. Ct. 1186 (2011), applied to a claim under the Uniformed Services

Specialist, Cropp recalled working with him, but not any
specific discussions they might have had about Plaintiff. Id.
Ex. A, Cropp Dep. 28:3-29:21; see also id. 29:9-12 ("[Q.] Is it
possible you might have talked to John Brennan [sic] about Mr.
Gillyard? A. Yes, it's possible."). Brenner himself does not
remember working with Cropp or discussing Plaintiff with Cosby.
Id. Ex. G, Brenner Dep. 8:8-9:5. Plaintiff offers no evidence
that Brenner knew about Plaintiff's complaints, displayed any
retaliatory animus toward Plaintiff, or communicated with
decisionmakers regarding Plaintiff. See Daniels, 2015 WL 252428,
at *10.

Regarding Cosby, the Human Resources Manager, she
denied knowledge of Plaintiff's OSC complaint. See Pl.'s Br. Ex.
B, 12:22-14:12 (stating that, although she worked on the OSC
complaint, she lacked access to the complainants' identities).

---

Employment and Reemployment Rights Act of 1994 ("USERRA"), and
which the Third Circuit applied to a Title VII retaliation claim
in McKenna v. City of Philadelphia, 649 F.3d 171 (3d Cir. 2011).
The Supreme Court held in Staub: "if a supervisor performs an
act motivated by antimilitary animus that is intended by the
supervisor to cause an adverse employment action, and if that
act is a proximate cause of the ultimate employment action, then
the employer is liable under USERRA." 131 S. Ct. at 1194
(footnotes omitted). Plaintiff believes that Staub and McKenna
direct the Court to implicate Defendant on account of the
retaliatorily motivated actions of nondecisionmaking employees
such as Brenner, Cosby, and Cropp. Pl.'s Br. 10-11. However, as
Defendant points out, Plaintiff has not shown that any Agency
employee had a retaliatory animus such that he or she intended
"to cause an adverse employment action." See Def.'s Reply Br. 1-
2. In Plaintiff's case, the "cat's paw" has no claws.

While she did know about Plaintiff's EEOC complaint, see id. Ex. P-7 (showing Cosby's EEOC Declaration), and she had some interaction with selecting officials,[9] there is no evidence that she displayed any retaliatory animus. Furthermore, the mere fact that Cosby communicated with decisionmakers does not raise an inference that she also attempted to influence them to retaliate against Plaintiff. See Daniels, 2015 WL 252428, at *10.

Regarding Cropp, the EEO Specialist, it is admitted that she was aware of Plaintiff's OSC and EEOC complaints, as they were filed in her office, but she denied involvement in any informal complaints. Pl.'s Br. Ex. A, Cropp Dep. 14:21-15:1, 15:20-23. Cropp stated that Plaintiff had complained to "headquarters" about her alleged failure to file an EEOC complaint on his behalf. Id. Ex. A, Cropp Dep. 15:24-18:5.

---

[9]      The evidence shows that Cosby had some contact with Paul Zwizanksi, the selecting official for the November 16, 2010, non-selection. See Pl.'s Br. Ex. P-36 (showing that Cosby was copied on an email from Zwizanski to another Human Resources specialist, asking, "Isn't [Plaintiff] the person that never sign up [sic] for selective service?"); id. Ex. B, Cosby Dep. 81:4-82:6 (discussing this email); id. Ex. P-15 (showing email from Cosby, copying Zwizanski, discussing reinstatement eligibility); id. Ex. P-10 (showing an email from a Human Resources specialist to Zwizanski, copying Cosby, that discussed Selective Service registration); id. Ex. D, Zwizanski Dep. 11:22-13:19, Mar. 13, 2014 (stating that Zwizanski and Cosby participated in staff meetings together). There is also evidence that Cosby communicated with Joseph Falls, the selecting official for the December 22, 2008, non-selection. See id. Ex. C, Falls Dep. 44:15-45:14, Dec. 12, 2013 (stating that Cosby advised him of the internal "rule of three" selection methodology).

However, Cropp, as EEO Specialist, was regularly the subject of
such complaints as part and parcel of her job function. There is
no indication in the record that, in this case, she developed a
retaliatory animus as a result of Plaintiff's particular
complaint. See id. Ex. A, Cropp Dep. 16:19-23 ("At the United
States Mint and headquarters we have an EEO office there. A lot
of times if an employee doesn't get the response from my office,
they will be able to call that office and get to speak to the
EEO officer or the EEO manager there."). In any event, Plaintiff
offers no evidence that Cropp communicated with decisionmakers
with respect to Plaintiff. See Daniels, 2015 WL 252428, at *10.

        Moreover, none of these employees had any substantive
role in the selections process. This process begins when
applications relating to a particular job posting are compiled
offsite by the ARC.[10] Pl.'s Br. Ex. C, Falls Dep. 17:8-15. From
there, a list of applicants is forwarded to a three-member
ranking committee, which scores the applicants and returns the
list to the ARC. Id. Ex. C, Falls Dep. 17:15-22; id. Ex. E,
Ferree Dep. 23:6-11, Mar. 10, 2014. The ARC calculates the
scores, checks eligibility, and forwards the resulting list of

_____

[10]     At the time of these events, Brenner was a Human
Resources Specialist at the ARC and, unlike Cosby and Cropp, the
only individual Plaintiff names who participated even marginally
in the selection process. Pl.'s Br. Ex. G, Brenner Dep. 6:17-
7:1, 7:17-24.

best candidates, termed the Certificate of Eligibility, to the selecting official. Id. Ex. C, Falls Dep. 17:22-18:2; id. Ex. E, Ferree Dep. 21:18-24, 23:1-5, 25:5-7. The selecting official, who by design has not been involved in the process to this point, interviews candidates and ultimately decides who will receive job offers. Id. Ex. C, Falls Dep. 18:3-6; id. Ex. E, Ferree Dep. 24:20-23, 26:8-14. The selections process is therefore a multilayered review designed to eliminate the effects of individual favoritism or animus. If Brenner, Cosby, or Cropp had intended to retaliate against Plaintiff, they could not have done so on their own. Plaintiff indicates that these individuals knew and worked with members of the selections process, and infers from this that they "could have discussed Plaintiff" with them and "therefore influenced the decisionmakers." Id. at 10. But without at least some evidence to establish this, Plaintiff's argument amounts to pure conjecture.

Unlike the plaintiff in Marra, who showed that, in addition to suggestive temporal proximity, his employer exhibited a pattern of antagonism against him, Plaintiff here has not shown suggestive temporal proximity and offers only speculation in support of his theory that his December 22, 2008, non-selection resulted from the retaliatory motives of Agency employees who knew about his protected conduct. See Daniels,

21

2015 WL 252428, at *11 (holding that plaintiff "cannot justifiably rely on mere speculation that these adverse actors learned of her complaints from other employees"). Accordingly, Plaintiff fails to establish a prima facie case of retaliation and his December 22, 2008, non-selection cannot survive summary judgment.

### c.   January 7, 2009, Non-Selection

At a minimum, the January 7, 2009, non-selection occurred eight months after Plaintiff filed his OSC complaint and before he filed his EEOC complaint. By itself, this temporal proximity is not unusually suggestive. See LeBoon, 503 F.3d at 233.

In order for Plaintiff to establish his prima facie case for this claim, he must produce additional evidence. Marra, 497 F.3d at 302. Unfortunately, he offers nothing that the Court has not already considered in its analysis of the December 22, 2008, non-selection above. Accordingly, for the same reasons the Court stated above, Plaintiff fails to establish a prima facie case of retaliation and his January 7, 2009, non-selection cannot survive summary judgment.

### d.   November 16, 2010, Non-Selection

The November 16, 2010, non-selection occurred two-and-a-half years after Plaintiff filed his OSC complaint and more

than one-and-a-half years after he filed his EEOC complaint. Taken alone, this temporal proximity is not unusually suggestive. See LeBoon, 503 F.3d at 233.

In order for Plaintiff to establish his prima facie case for this claim, he must produce additional evidence. Marra, 497 F.3d at 302. Once again, he offers nothing that the Court has not already considered. Accordingly, for the same reasons the Court stated above, Plaintiff fails to establish a prima facie case of retaliation and his November 16, 2010, non-selection cannot survive summary judgment.

. . . .

In sum, Plaintiff has failed to point to evidence of record sufficient to establish a prima facie case of retaliation.[11] Considering the evidence as a whole in the light most favorable to Plaintiff, his claims cannot withstand summary judgment.

---

[11]     Even assuming that Plaintiff had made out a prima facie case as to his April 15, 2008, non-selection (the only one on which he has at least a colorable claim), and accepting his version of the facts as true, his evidence is insufficient to cast doubt on Defendant's reason for not hiring him (i.e., his post-interview scores were lower than other, better-qualified candidates) or to infer that retaliation was the actual reason for his non-selection. See Moore, 461 F.3d at 342.

**IV.   CONCLUSION**

For the foregoing reasons, the Court grants Defendant's motion for summary judgment with respect to all of Plaintiff's claims. An appropriate order will follow.